### ADAMS *v.* HARRELL.

### Opinion delivered March 28, 1927.

1. TRUSTS—BASIS OF DOCTRINE.—The doctrine of trusts rests on the principle that equity looks on that as done which ought to be done, and in this application of this principle it looks through form to substance and fashions its decrees to protect parties from bad faith.

2. APPEAL AND ERROR—CHANCELLOR'S FINDING.—An appeal in a chancery case is tried *de novo,* and the chancellor's finding on disputed questions of fact will not be reversed unless clearly against the preponderance of the evidence.

3. TRUSTS—GOOD FAITH OF TRUSTEE.—A finding of the chancellor that in the administration of a trust the trustee acted in good faith *held* supported by the evidence.

Appeal from Jefferson Chancery Court: *Harvey R. Lucas,* Chancellor; affirmed.

#### STATEMENT OF FACTS.

R. T. Adams and Mrs. Angela Cook brought this suit in equity against J. A. Harrell for an accounting by him as trustee, and the grounds of the suit are that he acted in bad faith in the administration of the trust estate and owes them certain amounts as their share of the profits, which he had appropriated to his own use. Harrell filed an answer in which he denied all the allegations of the complaint and averred that he had discharged in good faith his duties as trustee, and had faithfully administered the trust estate. Mrs. Kate Allen was allowed to intervene and claim a certain amount of the trust fund

which remained in the hands of the trustee and which he admitted belonged to her.

It appears from the record that, some time prior to the 16th day of April, 1924, T. L. Cook had obtained the title to an oil lease at Norphlet, in Union County, Arkansas, comprising three and one-half acres. R. T. Adams ascertained that Cook would sell an undivided interest in the lease, and told J. A. Harrell about it. At the request of Adams, Harrell agreed to furnish the money to buy a one-fourth interest in the lease each for himself and Adams. Harrell paid $880 to Cook and took Adams' note for $440. This made Adams and Harrell each have a one-fourth interest in the lease. Subsequently, Mrs. Kate Allen and William Tierce jointly purchased an undivided one-fourth interest in the lease, for which they paid $880. Money being needed for the development and operation of the lease, Mrs. Allen lent $4,000 for this purpose and took a note signed by Cook, Harrell and Adams. Cook was made trustee of the operation and development of the lease, and the $4,000 borrowed from Mrs. Allen was turned over to him for that purpose. He did some work in starting drilling operations and then secretly left the State, taking the $4,000 with him.

Harrell located him through his wife in Memphis, Tennessee, and, through her, induced him to come back to El Dorado. When Cook arrived there, Adams, Harrell and Mrs. Cook got him in a room and demanded that he assign the lease to Harrell as trustee. Cook finally agreed to do this and did do so. Because Mrs. Cook had induced her husband to return to Union County, she was given the one-fourth interest in the lease which had been retained by Cook. When Cook assigned the lease to Harrell as trustee, Harrell issued certificates to Adams and Mrs. Cook, showing that they owned each a one-fourth interest in the lease, and a certificate to Tierce and Mrs. Allen showing their joint ownership of a one-fourth interest. Harrell retained his one-fourth interest in the lease.

Harrell began drilling operations, and two producing wells were drilled on the lease. Thereafter, Harrell sold the lease for the sum of $16,000, to be paid in oil. Then he sold the oil payment for the sum of $5,000 in cash and $6,000 payable in oil. He realized from the sale $11,000. He then made an accounting showing the items received by him and those expended by him in the administration of the trust estate. After accounting for all funds received by him as such trustee, Harrell admitted having in his hands $810.90 which was due Mrs. Allen and for which she was allowed to intervene.

The chancellor made a specific finding of facts in favor of Harrell, and found that the plaintiffs failed to establish their charges of bad faith against Harrell, and it was decreed that their complaint should be dismissed for want of equity. It was decreed that Mrs. Kate Allen should recover from J. A. Harrell the sum of $810.90. To reverse the decree, the plaintiffs have duly prosecuted an appeal to this court.

*McNalley & Sellers,* for appellant.

*Coy M. Nixon* and *E. W. Brockman,* for appellee.

HART, C. J., (after stating the facts). The subject of trust forms a large part of equity jurisprudence, and the equitable doctrine established in relation to trusts and trust estates enables a chancellor to deal with them in a way to maintain justice and good faith between the parties interested. The entire doctrine of trusts rests upon the principle that equity looks upon that as done which ought to be done. In the application of the principle, equity looks through form to substance, and it fashions its decrees to carry out the purposes of the trust agreement and to protect the parties from bad faith and unnecessary advantage. In this connection it may also be stated that the appeal in chancery is a trial *de novo* in this court upon the same pleadings and evidence heard in the court below, and the finding of the chancellor upon disputed questions of fact will not be reversed unless it is against the clear preponderance of the evidence. Bearing in mind these well settled principles of

equity and our familiar rules of practice in equity appeals, it cannot be said that the decree of the chancellor should be reversed.

Harrell rendered a definite and detailed account of his administration of the trust estate. It showed each item of money received by him and for what purpose it was expended. It is not shown that Harrell in any manner profited by his administration of the trust estate.

In the beginning, he furnished money with which he and Adams each obtained a one-fourth interest in the oil and gas lease owned by Cook. Mrs. Allen and Tierce then jointly acquired a one-fourth interest. Cook retained a one-fourth interest. The parties borrowed $4,000 from Mrs. Allen to use in drilling operations. Mrs. Allen says that she loaned them this money because Harrell signed the note. The money was turned over to Cook to be used by him in drilling for oil on the lease. Cook did some work, but secretly left the State, taking the money belonging to the trust estate with him. Harrell, through Cook's wife, induced him to return to Union County and to assign the lease to Harrell, as trustee for those beneficially interested in it. The interest of Cook was assigned to his wife.

Harrell then undertook to administer the trust estate by drilling for oil on the lease. He brought in two producing wells and sold the lease for the sum of $16,000 to be paid in oil. He then sold the oil payment of $16,000 for $5,000 in cash and $6,000 payable in oil. He obtained in all $11,000, for which he accounted to those owning the beneficial interest in the lease.

It is claimed by the plaintiffs, however, that he acted in bad faith in selling the $16,000 to be paid in oil for less than par value. They introduced witnesses whose testimony tended to establish that he should have obtained par for the $16,000 which was payable in oil. On the other hand, according to the testimony of Harrell and of two other reputable witnesses, who had had considerable experience in that oil field, Harrell sold the $16,000, which was payable in oil, for the full value thereof. It

is not shown that Harrell profited by the venture. The most that can be said about it is that he became uneasy about the venture and sold too low in order that he might reimburse himself for amounts advanced by him in purchasing the interest of himself and Adams in the lease and in borrowing money on his personal security and making other expenditures in drilling for oil. In this connection, it may be stated that Mrs. Allen was pressing Harrell for payment of the $4,000 which she had loaned to him and his associates. Cook had run off, and nothing could be made out of Adams or Mrs. Cook. Mrs. Allen was looking to Harrell for payment of the $4,000 loaned by her to him and his associates. Adams had never paid any part of the amount advanced by Harrell to him for his one-fourth interest in the lease. Under these circumstances, it cannot be said that the finding of the chancellor that Harrell acted in good faith in the matter is clearly against the preponderance of the evidence.

Again, it is claimed that Harrell acted in bad faith in making certain payments to a man named Koury. Harrell explains that these amounts were paid to Koury for well-drilling on the lease. We do not deem it necessary to set out the evidence in full or to discuss and review it in detail.

The chancellor made a specific finding of facts substantially as above stated and embodied the same in his decree. We deem it sufficient to say that we have carefully read the evidence in the case and cannot say that the finding of facts made by the chancellor is against the clear or decided preponderance of the evidence. The decision of the chancellor shows that it was made in conformity to the principles of equity above announced, and it is our opinion that the decree should be affirmed. It is so ordered.